UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHARLES BATTS | : |
| | : PRISONER |
| v. | : Case No. 3:04CV1191 (MRK)(WIG) |
| TODD BOGANOFF | : |

**RULING AND ORDER**

In this civil rights action, *pro se* plaintiff Charles Batts alleges that he was denied his constitutional right to refuse anti-psychotic medication, and that he has been subject to unreasonably restrictive confinement. Mr. Batts seeks damages and injunctive relief in the form of an order preventing any further mental health treatment and reducing his mental health score. Pending before the Court are Plaintiff's Motion for Leave of Court to File Second Amended Complaint [doc. #44]; Pl.'s Motion for Order [doc. #56]; Defendant's Motion for Summary Judgment [doc. #61-1]; Pl.'s Motion and Motion for Pre-Order [doc. #64]; Pl.'s Objection to Summary Judgment and Motion for Restraining Order [doc. #66]; Pl.'s Motion for Order [doc. #69-1]; Pl.'s Letter of Plaintiff to Judge [doc. #74] (requesting injunctive relief); Pl.'s Motion for Temporary Restraining Order and Preliminary and Permanent Injunction [sic] Relief [doc. #75-1]; Pl.'s Motion for Payment of Filing Fee Costs [doc. #80]; and Pl.'s Additional Objection to Summary Judgment and Motion for Restraining Order [doc. #82]. For the reasons that follow, Mot. for Order [doc. #69-1], Letter of Pl. to Judge [doc. #74], Mot. for TRO and Prelim. and Permanent Inj. Relief [doc. #75-1], Additional Objection to Summ. J. and Mot. for Restraining Order [doc. #82], and Mot. for Summ. J.[doc. #61-1] are DENIED without prejudice, and all other motions are DENIED.

# I

**A.     Facts**

In connection with Mr. Batts's requests for preliminary injunctive relief, portions of Mr. Batts's medical records have been filed been filed with the Court along with affidavits from those involved in his case. *See* Objection to Motion for Preliminary Injunction [Doc. #43-2]; Affidavit of Dr. Michel Mennesson [doc. #61] [hereinafter "Mennesson Aff."]; Affidavit of Dr. Tod Bogdanoff [doc. #61] [hereinafter "Bogdanoff Aff."]; Affidavit of Kristen Devoe, CSW [doc. # 77-2] [hereinafter "Devoe Aff."]; Affidavit of Judith Molloy, APRN [doc. #77-3] [hereinafter "Molloy Aff."]. The records and affidavits establish the following facts.

Charles Batts is an inmate at Garner Correctional Institution. Dr. Michel Mennesson started treating Mr. Batts in 2003. *See* Mennesson Aff. ¶¶ 2-4. In December of that year, Mr. Batts was characterized by Dr. Mennesson "most likely schizoaffective," which means that Mr. Batts had symptoms of both schizophrenia and bipolar disorder. *Id.* ¶¶ 4-6 (describing Mr. Batts as "tangential, grandiose, [and] overly verbose, lacked insight, had very poor judgment, seemed to respond to internal stimuli and had incoherent speech or statements" ). Mr. Batts had not been taking his psychotropic medication since February 2003, which concerned Dr. Mennesson because Mr. Batts "had proven to be assaultive in the past, when off medication." *Id.* ¶ 10. In particular, Mr. Batts had received a three-and-a-half-year sentence for assaulting prison staff at a time when he was not on his medication. *Id.* ¶ 5.

Dr. Tod Bogdanoff met with Mr. Batts on December 25 and noted that Mr. Batts's thinking "had little connection to reality." Bogdanoff Aff. ¶ 12. For instance, Mr. Batts believed that his name appeared on the back of televisions and on batteries, "and that numbers had a special message."

2

*Id.* Mr. Batts had "grandiose, paranoid delusions." *Id.* ¶ 13. Dr. Bogdanoff also noted that, in the past, Mr. Batts had "picked up multiple disciplinary reports and was dangerous to others" when he had become psychologically imbalanced. *Id.* ¶ 14.

Due to an increase in his delusional thinking, Mr. Batts was referred from his cellblock to an inpatient mental health unit on or about December 29, 2003. *Id.* ¶ 15. Judith Molloy, an advanced practice registered nurse, monitored Mr. Batts's condition while in the mental health unit. According to Nurse Molloy, Mr. Batts displayed paranoid and delusional thoughts. *See* Molloy Aff. ¶ 5. She stated that Mr. Batts reported that his mother was taken by a UFO in the 1940s, but he would not discuss the incident because he believes that if he speaks of it, the UFO may return and abduct him. Nurse Molloy also said that Mr. Batts's speech was tangential and disorganized, switching repeatedly from one topic to a completely unrelated topic. *See id.* ¶ 6.

Because Mr. Batts was "delusional, . . . easily provoked to anger, had no judgment or insight into [his] illness and needed medication" – which he had refused to take – Nurse Molloy requested on January 12, 2004, that a hearing be convened to decide whether Mr. Batts should be involuntarily medicated. Bogdanoff Aff. ¶ 17. The hearing was held two days later. Attending the hearing were panel members Dr. Liu, Dr. Mennesson, and psychiatric social worker Bill Kompare. *Id.* ¶ 18. Mr. Batts was given an opportunity to appear and present his side and was assisted by a prison-appointed advocate, Brian Henrickksen, and. *Id.* ¶ 20. At the conclusion of the hearing, the panel concluded that Mr. Batts should be involuntarily medicated because he was acutely psychotic, with paranoid delusions and an irritable affect, and because he met the criteria for a psychiatric emergency. *Id.* ¶ 21. Following the panel's decision, Mr. Batts was given an injection of medication. *Id.* ¶ 24.

While the record is not clear on the matter, it appears that at some point thereafter Mr. Batts

went off medication again.  On December 15, 2004, Mr. Batts sent a letter to a judge with a notation in the corner of the letter stating "Millet-Bernard needs a hit; Joey Rivera needs the death."  A Bridgeport Federal Court clerk also stated that while inquiring about a motion, Mr. Batts said to her "Mille needs a hit" and "Joey or Joy River needs to be killed."  The letter was forwarded to the Office of the Attorney General with a request that the matter be investigated.  When questioned by correctional staff, Mr. Batts stated that the language he used was not intended as a threat; instead it was a secret message to the judge.  Mr. Batts was not taking anti-psychotic medication at the time of these incidents.  *See* Incident Report [doc. #43-1].

In February 2005, Dr. Alf Bergman reviewed Mr. Batts's medical records.  *See* Progress Note [doc. #43-1].  At that time, Mr. Batts was uncooperative, and he refused to answer questions regarding his mental health, stating that all of the required information was contained in his medical and mental health records – but then claiming that all his mental health records were lies.  Based on his conversation with Mr. Batts, Dr. Bergman concluded that Mr. Batts would benefit from anti-psychotic medication, which may have helped him in the past.  However, according to Dr. Bergman, Mr. Batts did not at the time "meet criteria for involuntary medication."  Therefore, Mr. Batts was not involuntarily medicated at that time,  but Dr. Bergman noted that Mr. Batts's condition should be monitored closely.  *Id.*

In June and July 2005, Mr. Batts's paranoia and isolation were increasing.  He left his cell much less frequently and refused to speak with the mental health staff.  Molloy Aff. ¶ 7.  Mr. Batts also did not take his medications and he became irritable and argumentative with custody staff, displaying paranoid and irrational behavior.  Mr. Batts reported that, because he is schizophrenic, his eyeball comes out.  Molloy Aff. at ¶¶ 7-14.  In light of Mr. Batts's behavior and his history of

violence when not medicated, Nurse Molloy again referred Mr. Batts's case to an independent panel for permission to involuntarily medicate him.  *Id.* ¶ 12.  Mr. Batts was informed that a panel would be convened to determine whether he should be involuntarily medicated.  *Id.* ¶ 14.  He met with mental health clinical social worker Kristen Devoe, who was assigned as his advocate for the panel hearing.  Devoe Aff. ¶ 3.

The panel convened on August 3, 2005.  The panel comprised Dr. Mahalingaich, psychologist K. Matthews, and Ms. Devoe, though Ms. Devoe maintains that she "did not really participate in the decision making process other than to ensure that Mr. Batts was allowed to present his position on the issue."  *Id.* ¶ 6.  None of the panel members was involved in treating Mr. Batts.  Molloy Aff. ¶ 15.  Despite being given the opportunity, Mr. Batts did not present any evidence at the panel hearing, although he did voice his objection to being medicated.  *Id.*  After reviewing Mr. Batts's medical records and hearing him speak, Dr. Mahalingaich and Mr. Matthews determined that Mr. Batts should be involuntarily medicated.  They noted on the medical hearing referral form that he needed medication to "ensure safety of self and others," and indicated that without medication "[his] condition will deteriorate to the point of constituting a mental health emergency." Mental Health Involuntary Medication Referral [doc. #77-4].

As Mr. Batts began taking medication following the panel's decision, his condition improved, and he was transferred back to his cell block from the inpatient mental health unit.  Molloy Aff. ¶ 16-23.  Though Mr. Batts has displayed some irrational behavior since that time, he currently has no behavioral issues and has shown "marked improvement in organization of thought and clearer speech," as well as a "lower level of delusional thinking."  *Id.* ¶¶ 16-27.  According to Nurse Molloy, "[t]he plan [is] to continue to monitor symptoms, and encourage symptom recognition group

attendance." *Id.* ¶ 27. It is not clear from the evidence submitted whether Mr. Batts is still being involuntarily medicated.

### B.     Procedural History

Mr. Batts filed this action on July 19, 2004, maintaining that he had wrongfully been subject to mental health treatment to which he did not consent. Mr. Batts's original complaint named only "Todd Boganoff" as a defendant. *See* Complaint [doc. #2]. Thereafter, Mr. Batts amended his complaint to include Theresa Lantz and David Budlong, but in his amended complaint, Mr. Batts omitted mention of Dr. Bogdanoff. *See* Amended Complaint [doc. #31]. As a consequence, Dr. Bogdanoff was terminated as a defendant. Later, Mr. Batts maintained that his failure to include Dr. Bogdanoff as a defendant was due to his mistaken impression that it was unnecessary, and that he did indeed intend to pursue his claims against Dr. Bogdanoff. Therefore, he moved to further amend his complaint to reinstate Dr. Bogdanoff as a defendant. *See* Pl.'s Mot. for Leave of Ct. to File Second Am. Comp. [doc. #44]. Next, Mr. Batts filed a Notice of Motion Under Rule Fourteen [doc. #48] in which he sought to withdraw the amended complaint [doc. # 31]. The Court granted Mr. Batts's request and explained to him that as a result, "no additional claims or defendants listed in the Amended Complaint are part of this lawsuit." Ruling and Order [doc. #52] at 7. Finally, Mr. Batts filed a Motion for Order [doc. #56] requesting that the Court grant his previously filed motion to file his second amended complaint. The Court reserved ruling on his requests to file a second amended complaint until Mr. Batts had indicated whether he wanted the Court to appoint an attorney to represent him. *See* Order [doc. #68]. Thereafter, Mr. Batts stated that he would indeed like the assistance of counsel, and the Court directed the Clerk to locate *pro bono* counsel for him. *See* Ruling and Order [doc. #72]. To date, however, *pro bono* counsel has not yet been appointed.

In light of this history, the Court issues the following orders: **(1)** Mr. Batts is granted permission to file a second amended complaint in which he should name all defendants against whom he intends to proceed. Mr. Batts is advised, however, that it may be in his interest to wait until he has received assistance of the counsel that the Court has directed the Clerk to find for him. The Court will not require Mr. Batts to file an amended complaint until counsel is appointed. **(2)** Mr. Batts's Mot. for Leave of Ct. to File Second Am. Comp. [doc. #44] and Mot. for Order [doc. #56] are DENIED as moot. **(3)** The Clerk is directed to note that, as a result of the Court's April 1 Ruling and Order [doc. #52], only Dr. Bogdanoff is currently a defendant.

Mr. Batts has also filed a Mot. for Payment of Filing Fee Costs [doc. #80] in which he requests that Dr. Bogdanoff be ordered to pay the $150 filing fee for this case. Mr. Batts notes that it is unfair for him to have to pay the filing fee from his institutional inmate account. Instead, he believes that Dr. Bogdanoff should pay the fee. While the Court is sensitive to the financial burden the filing fee imposes, there is no authority to support Mr. Batts's request, and his Mot. for Payment of Filing Fee Costs [doc. #80] is therefore DENIED. If Mr. Batts prevails in this litigation, he may be able to seek to recover his costs. *See* Fed. R. Civ. P. 54.

Mr. Batts has five currently pending motions for preliminary injunctive relief relating to his mental health treatment. In the first motion, Mr. Batts seeks a "pre-restraining order" forbidding correctional officials from transferring him to Garner Correctional Institution. *See* Motion and Motion for Pre-Order [doc. #64]. On April 1, 2005, the Court dismissed all claims regarding Mr. Batts's housing assignments and mental health classification. *See* Ruling and Order [doc. #52]. Because these claims have been dismissed, Mr. Batts has no likelihood of success on the merits of these claims. Therefore, Mr. Batts's request for preliminary injunctive relief in the form of an order

that he not be confined at Garner Correctional Institution [doc. #64] is DENIED.

The second motion [doc. #66] is captioned "Objection to Summary Judgment and Motion for Restraining Order." In the motion, Mr. Batts argues that defendant's motion for summary judgment should not be granted. Mr. Batts does not include any request for relief. Accordingly, this motion [doc. #66] is DENIED as moot, but the Court will consider Mr. Batts's filing as an opposition to Defendant's motion for summary judgment, discussed below.

In his third motion, Mr. Batts seeks an order "denying the plaintiff Charles Rodriguez-Batts psychotic state medication." He argues that the prison doctors erred in prescribing medication for him because he has not acted out, displayed suicidal tendencies, or injured himself or others. Mr. Batts states: "The anti-psychotic medication intoxitioned into the plaintiff's body caused plaintiff immune system becomes defenseless to jail/prison predators, extortioners, targetted by gang members in concealment from the state prison mandatory programs and unsuspected terror." Motion for Order [Doc. #69-1]. In his supporting memorandum, Mr. Batts repeatedly refers to a federal cell. Mr. Batts, however, is a state prisoner and is confined in a state correctional facility. He also states: "Upon information and belief an 26 year old italian female snitch agency social worker from UConn stated she was an informant to a hallway custody correction's officer an that the plaintiff 43 years old has 17 years incarcerated has the I that other inmates advance hearing from useing the plaintiff music talent and that she want to get some of that special power." Memorandum of Law in Support of Motion for Order [Doc. #69-2] at 1.

Ms. Batts's fourth request is contained in his Letter of Plaintiff to Judge [doc. #74], dated September 22, 2005. He states that he has been forcibly medicated since July 29, 2005. Mr. Batts contends that correctional doctors are abusing their authority by conducting panels to review

involuntary administration of psychotropic medication and asks that the Court order defendant to terminate involuntary administration of medication and not to conduct further panels regarding his medication.

In his fifth motion, Mr. Batts seeks a temporary restraining order and preliminary and permanent injunctions to stop the involuntary administration of psychotropic medication. He also revisits the issue of his confinement at Garner Correctional Institution. *See* Mot. for TRO and Prelim. and Permanent Inj. Relief [doc. #75-1].

Mr. Batts's sixth motion similarly requests that the Court enjoin his forced medication and address his confinement. *See* Additional Objection to Summary Judgment and Motion for Restraining Order [doc. #82].

Defendant has filed a Motion for Summary Judgment [doc. #61-1] in which he maintains that all of Mr. Batts's claims should be dismissed.

## II

The Court turns first to Mr. Batts's numerous requests for a temporary restraining order and a preliminary injunction. Preliminary injunctive relief "'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). The Second Circuit has a well-established standard for injunctive relief. To warrant preliminary injunctive relief, the moving party "must demonstrate (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its

favor." *Brewer v. West Irondequoit Central Sch. Dist.*, 212 F.3d 738, 743-44 (2d Cir. 2000).[1]

As this Court has previously explained, an inmate has a right, under certain circumstances, to refuse anti-psychotic medication. *See* Ruling and Order [doc. #52] at 3 (citing *Washington v. Harper*, 494 U.S. 210 (1990)). If an inmate has a serious mental illness, correctional officials can treat that inmate with anti-psychotic medications against his will only when "the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Harper*, 494 U.S. at 227. Mr. Batts maintains that he does not need anti-psychotic medication. However, he offers no evidence to support his assertion other than his own opinion and the fact that he has not recently had any violent incidents.

When considering whether forced medication is necessary, courts are to defer to the judgment of medical personnel. "[A]n inmate's interests are adequately protected, and perhaps better served, by allowing the decision to medicate to be made by medical professionals rather than a judge." *Harper*, 494 U.S. at 231. Therefore, where "[a]dequate procedures exist" to ensure that involuntary medication is appropriate, judges are to "avoid 'unnecessary intrusion into either medical or correctional judgments.'" *Id.* at 233 (quoting *Vitek v. Jones*, 445 U.S. 480 496 (1980)).

On the current record, it appears that sufficient safeguards ensured that the involuntary medication of Mr. Batts was appropriate. Mr. Batts had a history of violence when not on

---

[1] Although a properly supported motion for preliminary injunction requires a hearing, oral argument and testimony are not required in all cases. *See Drywall Tapers & Pointers Local 1974 v. Local 530*, 954 F.2d 69, 76-77 (2d Cir. 1992). "Where, as here, 'the record before a district court permits it to conclude that there is no factual dispute which must be resolved by an evidentiary hearing, a preliminary injunction may be granted or denied without hearing oral testimony.'" *Thompson v. Lantz*, No. 3:04 CV 2084, 2005 WL 2387706, at *2 (D. Conn. Sept. 28, 2005) (quoting 7 James W. Moore, et al., *Moore's Federal Practice* ¶ 65.04[3] (2d ed. 1995)). Upon review of the record, the Court determines that oral testimony and argument are not necessary in this case.

medication, and the evidence supports the panel's conclusion that without medication, he would be a "significant danger to [himself] or others," *Harper*, 494 U.S. at 226, a conclusion consistent with the findings of his other treating physicians. Before being involuntarily medicated, Mr. Batts was given a hearing in front of independent panel members with mental health expertise. *See id.* at 233 (finding the "independence of the decision maker" of particular significance). Mr. Batts was permitted to appear before the panel and present evidence. *See id.* at 235 (finding procedural safeguards appropriate where the inmate was given "notice, the right to be present at an adversary hearing, and the right to present and cross-examine witnesses"). And Mr. Batts was afforded a representative to advocate for him. *See id.* at 236 ("Given the nature of the decision to be made, we conclude that the provision of an independent lay adviser who understands the psychiatric issues involved is sufficient protection.").

Nor has Mr. Batts alleged any facts from which the Court could conclude that the hearing was not an appropriate vehicle to resolve the question of proper treatment for him. *See id.* at 233 ("There is no indication that any institutional biases affected or altered the decision to medicate respondent against his will."). In sum, it appears at this time that the panel hearing was an appropriate "accommodation between an inmate's liberty interest in avoiding the forced administration of anti-psychotic drugs and the State's interests in providing appropriate medical treatment to reduce the danger that an inmate suffering from a serious mental disorder represents to himself and others." *Id.* at 236.

Therefore, Mr. Batts has not demonstrated that he is likely to succeed on the merits of his claim, and has not even demonstrated that there remains a sufficiently serious question going to the merits of the case that would warrant a preliminary injunction. Mr. Batts's motions for preliminary

11

injunctive relief [docs. ##69-1, 74, 75-1, and 82] are, therefore, DENIED but without prejudice to renewal should circumstances change. Mr. Batts's request for permanent injunction will be considered in conjunction with the merits of his claims. Because Mr. Batts has not yet had the assistance of counsel that the Court has directed the Clerk to find for him, the Court DENIES Defendant's Motion for Summary Judgement [doc. #61-1] without prejudice at this time. Defendant is authorized to renew his summary judgment motion once Mr. Batts has obtained representation.

### III

In sum, the Court issues the following orders: **(1)** Mr. Batts is granted permission to file a second amended complaint in which he should name all defendants against which he intends to proceed. He is advised, however, that it may be in his interest to wait until he has received assistance of the counsel that the Court has directed the Clerk to find for him. **(2)** Pl.'s Mot. for Leave of Ct. to File Second Am. Comp. [doc. #44] is DENIED as moot. **(3)** Pl.'s Mot. for Order [doc. #56] is DENIED as moot. **(3)** The Clerk is directed to note that, as a result of the Court's April 1 Ruling and Order [doc. #52], only Dr. Bogdanoff is currently a defendant. **(4)** Pl.'s Mot. for Payment of Filing fee Costs [doc. #80] is DENIED. **(5)** Pl.'s Mot. and Mot. for Pre-Order [doc. #64] is DENIED. **(6)** Pl.'s Objection to Summ. J. and Mot. for Restraining Order [doc. #66] is DENIED. **(7)** Pl.'s Mot. for Order [doc. #69-1], Letter of Pl. to Judge [doc. #74], Mot. for TRO and Prelim. and Permanent Inj. Relief [doc. #75-1], and Additional Objection to Summ. J. and Mot. for Restraining Order [doc. #82] are DENIED without prejudice. **(8)** Def.'s Mot. for Summ. J. is DENIED [doc. #61-1] without prejudice to renewal once Mr. Batts has been appointed counsel. **(9)** The Clerk is directed to continue its efforts to locate *pro bono* legal representation for Mr. Batts.

IT IS SO ORDERED,


/s/      Mark R. Kravitz
United States District Judge


Dated at New Haven, Connecticut, on December 8, 2005.